IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KIMBERLY SHARKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:24-CV-428-KFP |
| | ) [WO] |
| MONTGOMERY COUNTY BOARD OF EDUCATION; MONTGOMERY PUBLIC SCHOOLS, | ) ) ) ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

Now pending before the Court is Defendants' Motion to Dismiss. Doc. 10. Defendants argue that Plaintiff has failed to state a claim for both her Title VII claim and her 42 U.S.C. § 1981 claim. Plaintiff filed a Response in Opposition, (Doc. 18), and Defendants replied, (Doc. 19). The issue is now fully briefed and ripe for review. Upon consideration, the undersigned finds the motion should be GRANTED in part and DENIED in part, as explained below.

**I.   STANDARD OF REVIEW**

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed,* Inc., 693 F.3d 1317, 1321–22 (11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and each factual allegation should be "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2) & (d)(1). To "state a claim to relief that is plausible on its face," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 570). With this in mind, the Court accepts Plaintiff's factual allegations as true and construes the Complaint in her favor. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

## II.  BACKGROUND[1]

Plaintiff is a Caucasian woman who holds a bachelor's degree in biology, a master's degree in public health, and a Ph.D. in early childhood education. Defendants hired Plaintiff as an Early Childhood Director, and until March 2023, she received satisfactory job performance evaluations. In March 2023, during the "evaluation close-out interview" with her previous boss, Chief Academic Officer Bernard Mitchell, an African American man, she presented evidence to support a job performance rating of four on a scale of one to five. Doc. 1 at 3, ¶ 9. Mitchell informed Plaintiff that even though she had presented ample evidence to support this score, the Assistant Superintendent Jamie Wilson, an African American woman, and Superintendent Dr. Melvin Brown, an African American

---

[1] The Court recites only the facts pertinent to resolving Plaintiff's Motion to Dismiss.

man, would not allow Mitchell to give Plaintiff that rating. Plaintiff alleges that on at least two occasions, Mitchell advised Plaintiff that "if I were you I would be looking for another job." *Id.* ¶ 11.

On May 2, 2023, Plaintiff was informed via a "Memo of Concern" from the new Chief Academic Officer, Dr. Monte Linebarger, an African American man, that her job duties and responsibilities required an Administrative Certification. Plaintiff did not have an Administrative Certification because it was not required when she was hired for her position. When she offered to take classes to acquire the newly required Administrative Certification, her African American male supervisors refused her the opportunity.

"In September 2023, central office personnel began being relocated to the newly renovated Montgomery Public School Leadership Center," a plan that had been in place for more than a year. *Id.* at 6, ¶ 26. During the week of October 16, 2023, all the personnel on Plaintiff's floor, except her, moved to the new facility. The moved personnel included Plaintiff's secretary, who is African American, and the Education Specialist associated with Plaintiff's department, who is African American. New furniture was purchased for everyone except Plaintiff. Consequently, beginning in mid-October, Plaintiff was the only person on her floor. The only other occupants of the building were members of the Finance Department on the first floor; the ground and second floor were unoccupied. Because there were so few people in the building, the air conditioning/heating maintenance person informed Plaintiff that the boiler system in the building would not be turned on. Plaintiff remained alone on her unheated floor until she resigned her employment on December 31, 2023.

## III.  DISCUSSION

Plaintiff brought two causes of action against Defendants. She alleges that she had been: (1) discriminated against and constructively discharged because of her race and sex in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991; and (2) discriminated against in violation of 42 U.S.C. §§ 1983 and 1981. Defendants argue that Plaintiff fails: (1) to establish a "Section 1983/1981 claim," (Doc. 10 at 5), (2) to establish a Title VII constructive discharge claim as a matter of law, and (3) to state a viable § 1981 race discrimination claim. The Court addresses each of Defendants' arguments in turn.

### A.  § 1981 through § 1983 Claim

Defendants argue that Plaintiff fails to establish a § 1981 claim against them because she has not alleged a custom or policy that caused her injuries. Plaintiff responded that the "unofficial custom or practice was shown through repeated acts of discrimination perpetuated against [her] by the Defendants policymakers." Doc. 18 at 11.

Plaintiff brought her § 1981 claim against the Montgomery County Board of Education and Montgomery Public Schools, entities considered state actors. *See Jaffree v. Wallace*, 705 F.2d 1526, 1533 (11th Cir. 1983) ("Alabama county school boards are creatures of the state and are controlled by the state."). "The law is clear that claims against state actors for violations of § 1981 claim must be brought pursuant to 42 U.S.C. § 1983." *Mack v. Wilcox Cnty. Comm'n*, 2009 WL 4884310, at *5 (S.D. Ala. Dec. 9, 2009) (citing *Bryant v. Jones*, 575 F.3d 1281, 1288 n.1 (11th Cir. 2009)). Plaintiff properly alleged that her § 1981 claim was through § 1983. But because it must be brought through § 1983, there

4

is an additional constraint to her § 1981 claim: "the discrimination must be a 'custom or policy' of that entity." *Dunklin v. Montgomery Cnty. Bd. of Educ.*, 652 F. Supp. 2d 1226, 1234 (M.D. Ala. 2009) (quoting *Webster v. Fulton Cnty.*, 283 F.3d 1254, 1257 n.8 (11th Cir. 2002)); *see also McCarthy v. City of Cordele*, 111 F.4th 1141, 1146 (11th Cir. 2024) ("When the employer is a municipality, the employee must allege that the racial discrimination was a municipal 'policy or custom.'" (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978))). "To allege a custom or policy, a plaintiff must plead either (1) an 'officially promulgated' policy or (2) 'an unofficial custom or practice . . . shown through the repeated acts of a final policymaker for the [governmental entity].'" *Sharp v. City of Montgomery*, 2021 WL 5989104, at *3 (M.D. Ala. Dec. 17, 2021) (alterations in original) (quoting *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc)); *see also Cuesta v. Sch. Bd. of Miami-Dade Cnty.*, 285 F.3d 962, 966 (11th Cir. 2002). In either scenario, Plaintiff must establish "that the local governmental entity . . . has authority and responsibility over the governmental function in issue and [] [] identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular [] violation in issue." *Grech*, 335 F.3d at 1330 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *Hill v. Clifton*, 74 F.3d 1150, 1152 (11th Cir. 1996)); *see also Thomas v. Cobb Cnty. Sheriff's Dep't*, 2010 WL 431468, at *5 (N.D. Ga. Feb. 4, 2010) (applying the tests outlined in *Grech* to a § 1981 claim).

Plaintiff did not allege that her injuries resulted from an officially promulgated policy. Thus, her complaint must sufficiently allege an unofficial custom or practice, which

5

she can do by describing "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (citation and quotation marks omitted). "Normally random acts or isolated incidents are insufficient to establish a custom or policy." *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986) (citation omitted).

Plaintiff alleges a number of discriminatory acts in her complaint. However, her complaint does not plead that these discriminatory acts constituted a custom or policy of Defendants. While Plaintiff's response brief asserts that the repeated acts of discrimination amounted to an unofficial custom or practice, "a plaintiff cannot amend a complaint through arguments in briefs." *Henderson v. McMurray*, 611 F. Supp. 3d 1287, 1295 (N.D. Ala. 2020). The Court is bound by the allegations contained in the complaint, and the complaint failed to allege that the repeated acts of discrimination amounted to an unofficial custom or policy by Defendants. Moreover, even if the Court could consider the policy/custom allegations made in the response brief, in neither the complaint nor the response brief did Plaintiff plead factual allegations which identified officials who speak with final policymaking authority for Defendants concerning the alleged discriminatory acts, nor plead that Defendants were directing anyone to perform the alleged discriminatory acts. *See Grech*, 335 F.3d at 1330.

Accordingly, Defendants' Motion to Dismiss the § 1981 claim is due to be granted. *See Matthews v. Clayton Cnty. Pub. Sch.*, 2019 WL 13273267, at *9 (N.D. Ga. Feb. 20, 2019), *report and recommendation adopted,* 2019 WL 13273268 (N.D. Ga. Mar. 26, 2019)

(granting the defendants' motion to dismiss the plaintiff's § 1981 claim because the complaint did not "contain any factual allegations asserting that her injury result[ed] from the application of a policy or custom."); *Moore v. Miami-Dade Cnty.*, 502 F. Supp. 2d 1224, 1232 (S.D. Fla. 2007) (granting defendants' motion to dismiss because plaintiff "fail[ed] to identify an unofficial custom or practice of [defendant], shown through repeated acts of a final policymaker, that caused [p]laintiff's alleged constitutional deprivation."); *Varn v. City of Nashville*, 2023 WL 2589224, at *5 (M.D. Ga. Mar. 21, 2023) (granting defendant's motion to dismiss because plaintiff never alleged that defendant was directing the practices and policies of the alleged discriminatory employer). Because the Court finds that the § 1981 claim fails under the § 1983 analysis, it will not consider the Defendants' argument that the § 1981 claim fails on the merits.

    **B.**     **Title VII Constructive Discharge Claim**

Defendants argue that Plaintiff's Title VII constructive discharge claim fails as a matter of law. They assert that Plaintiff "has not alleged facts that establish that her resignation was in response to a change in her employment status or situation," (Doc. 10 at 6), nor do her allegations "amount to unbearable working conditions that would cause a reasonable person to resign," (*Id.* at 7). Plaintiff responded that the "overt and unabashed pattern of discrimination that forced her to quit" is analogous to the plaintiff in *Bryant*, 575 F.3d at 1298–99. Doc. 18 at 10.

"A constructive discharge occurs when a discriminatory employer imposes working conditions that are 'so intolerable that a reasonable person in [the employee's] position would have been compelled to resign.'" *Fitz v. Pugmire Lincoln-Mercury, Inc.*, 348 F.3d

7

974, 977 (11th Cir. 2003) (quoting *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997)). A constructive discharge does not have to be prompted by an official act; it can be in response to harassment, which creates a hostile environment constructive discharge claim. *Gray v. Koch Foods, Inc.*, 580 F. Supp. 3d 1087, 1118 (M.D. Ala. 2022).

Plaintiff alleges she was given an inaccurate performance review, she was told to look for another job, and she was not given the opportunity to obtain the newly required credential for her job. She further alleges that her employer purchased new furniture for all other employees except her and that she was systematically left behind as the only personnel on her floor in a mostly empty building, in which the boiler system was turned off. Plaintiff insists that all these instances were due to discrimination based on her race and sex, and that these actions amount to "constructive[] discharge[] because the Defendants deliberately made [her] working conditions intolerable and thereby forced her to quit her job." Doc. 1 at 7. The Court finds that these instances, taken together and viewed as true, nudge her complaint across the line from conceivable to plausible, making her claim sufficient to survive a motion to dismiss. Accordingly, Defendants' Motion to Dismiss the constructive discharge claim is due to be denied. *See Alvarez v. Lakeland Area Mass Transit Dist.*, 406 F. Supp. 3d 1348, 1355 (M.D. Fla. 2019).

## VI.   CONCLUSION

For these reasons, the undersigned ORDERS as follows:

1. The Motion to Dismiss (Doc. 10) is GRANTED as to the § 1981 claim;
2. The Motion to Dismiss (Doc. 10) is DENIED as to the Title VII claim.

DONE this 23rd day of October, 2024.

                                /s/ Kelly Fitzgerald Pate
                                KELLY FITZGERALD PATE
                                UNITED STATES MAGISTRATE JUDGE